## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>JOHN DOE subscriber assigned IP address 73.249.35.192,<br><br>       Defendant. | Civil Action No. 3:25-cv-01217-VAB |

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE</u>

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   FACTS ................................................................................................................... 2

  A.  Plaintiff Has a Serious Problem with BitTorrent Infringement ........................... 2

  B.  The Infringer ....................................................................................................... 3

III.  ARGUMENT ........................................................................................................ 4

  A.  Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous
     Defendant ............................................................................................................ 4

  B.  There Is Good Cause for this Court to Grant Plaintiff's Motion for Leave to Serve Its
     Subpoena ............................................................................................................. 5

     1.  Plaintiff's Complaint Makes A Prima Facie Claim for Direct Copyright Infringement .. 5

     2.  Plaintiff Identifies the Limited and Specific Information Its Subpoena Seeks That Is
        Necessary to Serve Doe Defendant ................................................................... 7

     3.  There Are No "Alternative Means" to Uncover Doe Defendant's True Identity ........... 7

     4.  The Subpoenaed Information Is Necessary to Advance Plaintiff's Infringement Claim. 8

     5.  Defendant's Minimum Privacy Interest Is Substantially Outweighed by Plaintiff's
        Interest in Protecting Its Copyrights from Mass BitTorrent Infringers ......................... 9

  C.  Protective Order ................................................................................................ 10

IV.  CONCLUSION................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1013 (9th Cir. 2001)................................... 6

*Arista Records LLC v. Doe*, 604 F.3d 110, 115 (2d Cir. 2010) ............................................... 4, 5, 9

*Arista Records LLC v. Does 1-4*,
    589 F. Supp. 2d 151, 152–53 (D. Conn. 2008) ................................................................ *passim*

*Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) ........................................ 4

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)............................................ 5

*John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012) ................................... 7, 8

*London–Sire v. Doe*, 542 F.Supp.2d 153, 178 (D. Mass. 2008)..................................................... 7

*Malibu Media, LLC v. Doe*,
    No. CV 14-4808 (JS)(SIL), 2016 WL 4574677 (E.D.N.Y. Sept. 1, 2016) ............................... 6

*Malibu Media, LLC v. Doe*,
    No. CV 15-3504 JFB (SIL), 2016 WL 4444799 (E.D.N.Y. Aug. 23, 2016) ........................... 9

*Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 173.68.5.86*,
    No. CV 1:16-02462-AJN, 2016 WL 2894919 (S.D.N.Y. May 16, 2016) ........................... 4, 5

*Next Phase Distribution, Inc. v. John Does 1-27*,
    284 F.R.D. 165, 171–72 (S.D.N.Y. 2012)................................................................................ 8

*Patrick Collins, Inc. v. John Doe*, 945 F. Supp. 2d 367, 375 (E.D.N.Y. 2013)............................ 7

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
    208 F.R.D. 273, 276 (N.D. Cal. 2002) .................................................................................... 4

*Sony Music Entm't Inc. v. Does 1-40*,
    326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004) ......................................................................... 6, 9

*Strike 3 Holdings, LLC v. Doe*,
    No. CV 3:17-1680 (CSH), 2017 WL 5001474 (D. Conn. Nov. 1, 2017) ........................ *passim*

*UMG Recordings, Inc. v. Doe*,
    No. CV 08–1193, 2008 WL 4104214 (N.D. Cal. Sept. 3, 2008) ........................................... 10

*UN4 Prods., Inc. v. Doe*,
    No. CV 17-3278 PKC (SMG), 2017 WL 2589328 (E.D.N.Y. June 14, 2017)........................ 5

*United States v. Ulbricht*, 858 F.3d 71, 84, 96 (2d Cir. 2017)....................................................... 9

**Statutes**

17 U.S.C. § 106(1) ......................................................................................................................... 6

17 U.S.C. § 410(c) ......................................................................................................................... 6

**Other Authorities**

*American Registry for Internet Numbers Number Resource Policy Manual* ................................ 8

*Beginner's Guide to Internet Protocol (IP) Addresses*.................................................................. 7

Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The
    Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United
    States House Of Representatives, (January 2011) at
    http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-
    11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-
    pornography-and-other-internet-crimes.pdf .............................................................................. 2

**Rules**

Fed. R. Civ. P. 26(d)(1) ............................................................................................................ 1, 4

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff hereby respectfully submits this Memorandum of Law in support of its Motion for Leave to serve a third-party subpoena prior to a rule 26(f) conference.

### I.    INTRODUCTION

Plaintiff, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff") is the owner of original, award winning motion pictures featured on its brand's subscription-based adult websites. Unfortunately, Strike 3's success has led users on the Internet to illegally infringe its works on a very large scale.  Indeed, Strike 3's motion pictures are among the most infringed content in the world.  *See* Declaration of Jorge Arco, attached hereto as Exhibit "A." [hereinafter "Arco Decl."].

Strike 3, using its proprietary forensic software, VXN Scan and the Cross Reference Tool, monitored and detected the infringement.  *See id.* at ¶ 47.  This software recorded Defendant's IP address illegally distributing Strike 3's motion pictures.  *See* Declaration of Patrick Paige, attached hereto as Exhibit "B".  This IP address is assigned to Defendant by his or her Internet Service Provider ("ISP"), which is the only party with the information necessary to identify Defendant by correlating the IP address with John Doe's identity.  *Id*. at ¶ 28.  As a result, Plaintiff now seeks leave to serve limited, immediate[1] discovery on Defendant's ISP, Comcast Cable Communications, LLC (Comcast Cable), in the form of a Rule 45 subpoena, so

---

[1] Further impelling expediency, Defendant's ISP only maintains the internal logs of the requested information for a brief period of time*.  See, e.g.*, Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at http://www.justice.gov/sites/default/files/testimonies/ witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf, stating: "Some [ISP] records are kept for weeks or months; others are stored very briefly before being purged."

that Plaintiff may learn Defendant's identity, investigate Defendant's role in the infringement, and effectuate service.  Plaintiff will only use this information to prosecute the claims made in its Complaint.  Without this information, Plaintiff cannot serve Defendant nor pursue this lawsuit and protect its copyrights.

## II.    FACTS

### A.   Plaintiff Has a Serious Problem with BitTorrent Infringement

Strike 3 holds title to the intellectual property associated with the *Blacked*, *Blacked Raw*, *MILFY*, *Slayed*, *Tushy*, *Tushy Raw*, *Vixen*, and *Wifey* adult brands (the "Brands"), including the copyrights to each of the motion pictures distributed through the Brands' sites and the trademarks to each of the Brand's names and logos.  Decl. Arco at ¶ 14.  Strike 3 is owned entirely by General Media Systems ("GMS") and has existed since 2015.  *Id.* at ¶ 9.

Although it started out small, the Brands' websites now host approximately 15 million visitors each month.  *Id.* at ¶ 15.  This success is no fluke.  Strike 3's philosophy has always been to pay artists and models an amount above that being paid by other companies, focusing on delivering superior quality films.  *Id.* at ¶¶ 17–18.  Indeed, Strike 3's motion pictures are known for having some of the highest production budgets of any in the adult industry.  *Id.* at ¶ 20.

Because of this commitment to quality, the websites for the Brands have a subscriber base that is one of the highest of any adult sites in the world.  *Id.* at ¶ 21.  Strike 3 is also frequently the number one seller of adult DVDs in the United States.  *Id.* at ¶ 22.  Finally, Strike 3's content is licensed throughout the world, including by most major cable networks.  *Id.* at ¶ 23.  This success has led to numerous awards being bestowed upon Strike 3, such as "adult site of the year," "best marketing campaign – company image," and "best cinematography."  *Id.* at ¶ 24.

Unfortunately, piracy is a major threat and causes tremendous damage to Strike 3; while Strike 3 "can compete in the industry, [it] cannot compete when [its] content is stolen." *Id.* at ¶ 27. To continue to provide value for its subscribers, exciting and inspiring projects for adult performers, and to continue to create top paying jobs and growth in the adult community, Strike 3 must protect its copyrights. *Id.* at ¶ 40.

### B. Plaintiff Brings Its Litigation in Good Faith

Strike 3 is mindful of the nature of the litigation and its goal is to not publicly disclose the choices that people make regarding the content they wish to enjoy. Moreover, Strike 3 does not seek to force anyone to settle unwillingly, especially anyone that is innocent. *Id.* at ¶ 34. Strike 3 only files suit against extreme infringers, and only proceeds with amended complaints based on strong evidence. *Id.* at ¶ 35. Indeed, each lawsuit is brought against infringers that not only engage in illegal downloading, but who are also large-scale unauthorized distributors of Strike 3's content. *Id.* Strike 3 does not seek settlements unless initiated by a defendant or a defendant's counsel. *Id.* at ¶ 36. Additionally, Strike 3 does not send demand letters. *Id.* Finally, although certainly Strike 3 does not believe anyone should be embarrassed about enjoying Strike 3's works (they just need to pay for that right, not steal it), Strike 3 respects the desire of defendants to keep private their choices regarding the content they choose to enjoy. Accordingly, Strike 3 has a policy to: (1) enter into confidentiality agreements with defendants to facilitate resolution of a case; and (2) stipulate to requests by defendants for the entry of orders in litigation to maintain the confidentiality of a defendant's identity. In sum, Strike 3 is careful to only proceed to litigation with strong cases, when it has a good faith basis for doing so, so as to enforce its rights in a way that is mindful of the defendant's privacy interests.

Strike 3 is a successful adult entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs, and licenses. *Id.* at ¶ 38. Strike 3's goal is to deter piracy,

seek redress for its harmful consequences, and direct those who infringe content to the avenue of legitimately acquiring access to Strike 3's works.

## III.    ARGUMENT

### A.  Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant

"Though parties generally may not initiate discovery prior to satisfying the meet and confer requirement of Fed. R. Civ. P. 26(f), courts may in some instances order earlier discovery." *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012).  "[A] party may engage in discovery before such a conference pursuant to court order."  *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 173.68.5.86*, No. CV 16-02462-AJN, 2016 WL 2894919, at *2 (S.D.N.Y. May 16, 2016) (citing Fed. R. Civ. P. 26(d)(1)). The Court investigates whether Plaintiff has "good cause" before ordering early discovery. *See Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151, 152–53 (D. Conn. 2008) (citing *Semitool, Inc. v. Tokyo Electron Am., Inc.,* 208 F.R.D. 273, 276 (N.D. Cal. 2002) (noting "[g]ood cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party")).

The Second Circuit has noted that in John Doe proceedings, "identification of the alleged infringers [is] indispensable for the vindication of plaintiffs' copyright[s]" and that information was not available "through alternative means."  *Arista Records LLC v. Doe*, 604 F.3d 110, 115 (2d Cir. 2010) (agreeing with the findings of the magistrate judge and denying Doe defendant's motion to quash plaintiff's subpoena). This Court, in agreement with *Arista*, analyzes five factors to determine whether good cause exists. *Strike 3 Holdings, LLC v. Doe*, No. CV 3:17-1680 (CSH), 2017 WL 5001474, at *2 (D. Conn. Nov. 1, 2017) (citing *Arista Records*, 604 F.3d at 119. The factors include:

4

(1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of
actionable harm, . . . (2) [the] specificity of the discovery request, . . . (3) the
absence of alternative means to obtain the subpoenaed information, . . . (4) [the]
need for the subpoenaed information to advance the claim, . . . and (5) the
[objecting] party's expectation of privacy.

*Id.* (citations omitted). This analysis has become the standard in BitTorrent copyright cases. *See*

*UN4 Prods., Inc. v. Doe*, No. CV 17-3278 PKC (SMG), 2017 WL 2589328, at *1 (E.D.N.Y.

June 14, 2017) (collecting cases). "If '[a]pplication of these 'principal factors' confirms that the

Plaintiff is entitled' to the requested subpoena, the motion for early discovery will be granted for

'good cause.'" *Strike 3 Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at *2 (quoting

*Malibu Media, LLC*, 2016 WL 2894919, at *2); *see Strike 3 Holdings, LLC v. Doe*, No. 18-

12585 (NLH)(JS), 2020 WL 3567282 (D.N.J. June 30, 2020) .

    B. <u>There Is Good Cause for this Court to Grant Plaintiff's Motion for Leave to Serve Its
Subpoena</u>

       *1. Plaintiff's Complaint Makes A Prima Facie Claim for Direct Copyright
Infringement*

To make a *prima facie* claim for copyright infringement, Plaintiff must show

(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are

original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff's

Complaint accomplishes this, stating: (1) "Plaintiff is the owner of the Works, which [are] an

original work of authorship"; (2) "[d]efendant copied and distributed the constituent elements of

Plaintiff's Works using the BitTorrent protocol";  and (3) "[a]t no point in time did Plaintiff

authorize, permit or consent to Defendant's distribution of its Works, expressly or otherwise."

*See* Complaint at ¶¶ 52–54.

Plaintiff owns a valid copyright in the Works, which are registered with the United States

Copyright Office.  *See* 17 U.S.C. § 410(c); *see also* Complaint at ¶¶ 46, 49.  All of Plaintiff's

copyrights were registered with the Copyright Office at the time suit was filed.  *Fourth Estate*

*Pub. Benefit Corp. v. Wall-Street.com, LLC*, __ U.S. __, 139 S. Ct. 881, 886-87 (2019); *see* Compl. Ex. A. Plaintiff's *prima facie* allegations of infringement are attested to by Mr. Arco. *See* Decl. Arco. Finally, each digital file has been verified to be a copy of one of Plaintiff's copyrighted works. *See* Declaration of Susan B. Stalzer, Exhibit "C."

Plaintiff has also stated a plausible *prima facie* showing of "copying." "The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights, described at 17 U.S.C. § 106." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n.3 (9th Cir. 1989). Plaintiff alleges that Defendant not only downloaded Plaintiff's works over the BitTorrent network, *see* 17 U.S.C. § 106(1), but also distributed these files to the BitTorrent swarm. *See id.* § 106(3); *see also* Compl. at ¶ 38.

A "[p]laintiff has made a concrete, prima facie case of copyright infringement by . . . alleging unlawful downloading, copying, and distribution of this work by specifying the type of technology used, the IP address from which the file was accessed and shared, and the date and time of the infringement." *Malibu Media, LLC v. Doe*, No. CV 14-4808 (JS)(SIL), 2016 WL 4574677, at *6 (E.D.N.Y. Sept. 1, 2016). "[T]he use of P2P systems to download and distribute copyrighted music has been held to constitute copyright infringement." *Sony Music Entm't Inc.*, 326 F. Supp. 2d, at 565–66 (collecting cases).

 2. *Plaintiff Identifies the Limited and Specific Information Its Subpoena Seeks That Is Necessary to Serve Doe Defendant*

Plaintiff's Subpoena is limited and only "seeks concrete and narrow information: the name and address of the subscriber associated with [Doe Defendant's] IP address . . . ." *John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012). "Courts have labeled the subscriber's identity and address as 'highly specific,' recognizing that Plaintiffs clearly need identification of the putative John Does in order to serve process on them and prosecute their

6

claims . . . ." " *Strike 3 Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at \*3 (citations
and internal quotations omitted); *see Arista Records*, 589 F. Supp. 2d at 153 (permitting
"expedited discovery limited to the 'name, address, telephone number, e-mail address, and
Media Access Control addresses for each defendant'") (quoting *London–Sire v. Doe*, 542
F.Supp.2d 153, 178 (D. Mass. 2008) (Gertner, J.)). "Because the subpoena is sufficiently
specific, the second principal factor weighs in favor of the Court granting Plaintiff's motion for
leave to serve the subpoena." *Strike 3 Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at
\*3.

### 3. There Are No "Alternative Means" to Uncover Doe Defendant's True Identity

At this early stage in litigation, "[t]he only information Plaintiff has regarding Defendant
Doe is his IP address." *Id.* at \*4. People using the internet are anonymous to the public, but the
ISPs responsible for assigning any given IP address "know who an address is assigned to and
how to get in contact with them."[2]  ISPs' records "are the only available evidence that allows us
to investigate who committed crimes on the Internet.  They may be the only way to learn, for
example, that a certain Internet address was used by a particular human being to engage in or
facilitate a criminal offense."[3]  Since there is no public registry of what IP addresses correspond
to which subscribers, Plaintiff's subpoena is necessary to advancing litigation. *Cf. Strike 3
Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at \*4 (citation omitted) ("Defendant's
ISP . . . is the only entity that can correlate the IP address to its subscriber and identify Defendant
as the person assigned the IP address . . . during the time of the alleged infringement.").

---

[2]  *Beginner's Guide to Internet Protocol (IP) Addresses* at p. 4, available at
https://www.icann.org/en/system/files/files/ip-addresses-beginners-guide-04mar11-en.pdf.; *American
Registry for Internet Numbers Number Resource Policy Manual* at 4.2, available at
https://www.arin.net/policy/nrpm.html#four2.

[3] Statement from Jason Weinstein, n.2, *supra*.

There is simply no alternative means by which Plaintiff can identify Doe Defendant absent the present subpoena. Indeed, "BitTorrent software is 'largely anonymous' except insofar as it requires a user to broadcast the user's IP address." *John Wiley & Sons, Inc.*, 284 F.R.D., at 190; *see also UN4 Prods.*, No. CV 17-3278 PKC (SMG). 2017 WL 2589328 at *3 ("BitTorrent's appeal to potential infringers is the large degree of anonymity it provides users."). The ISP is the only entity that can correspond a subscriber's identity with his or her IP address, and since Plaintiff "cannot identify [Doe Defendant] without a court-ordered subpoena, . . . there is good cause to allow for early discovery." *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 171–72 (S.D.N.Y. 2012).

4.    *The Subpoenaed Information Is Necessary to Advance Plaintiff's Infringement Claim*

As previously emphasized, Plaintiff cannot properly serve Doe Defendant without first ascertaining the subscriber's identity from his or her ISP. Judge Chin framed this factor aptly: "Ascertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process." *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004). Plaintiff has a strong claim, indeed, *Arista* noted that the "the fundamental copyright principles are clear." *Arista Records*, 604 F.3d at 117. "Because learning the true identities of the pseudonymous individuals alleged to have violated Plaintiffs' copyrights is essential to their prosecution of this litigation, Plaintiffs have demonstrated their need for expedited discovery." *Arista Records*, 589 F. Supp. 2d at 153; *see Malibu Media, LLC v. Doe*, No. CV 15-3504 JFB (SIL), 2016 WL 4444799, at *11 (E.D.N.Y. Aug. 23, 2016) ("Without learning the Defendant's identity and address, the Plaintiff will be unable to serve process and pursue its claim.") (citation omitted).

5.    *Defendant's Minimum Privacy Interest Is Substantially Outweighed by Plaintiff's Interest in Protecting Its Copyrights from Mass BitTorrent Infringers*

"[T]here is no expectation of privacy in 'subscriber information provided to an internet provider,' such as an IP address." *Strike 3 Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at *5 (citing *United States v. Ulbricht*, 858 F.3d 71, 84, 96 (2d Cir. 2017)); *see also Sony Music Entm't Inc.*, 326 F. Supp. 2d at 566–67 (noting Plaintiffs are "entitled to discovery in light of" this minimal interest). Indeed, Plaintiff's central need for the subpoenaed for information, combined with its strong claim, substantially favors good cause. *See Arista Records*, 604 F.3d at 124 (finding Doe Defendant's "expectation of privacy for sharing copyrighted [works] through an online file-sharing network as simply insufficient to permit him to avoid having to defend against a claim of copyright infringement.").

Moreover, "[i]n cases where parties have argued that the First Amendment protected their anonymous speech in using their IP addresses, the Second Circuit has held that copyright infringers are not entitled to shield their identities from those who seek to enforce their claims under copyright law." *Strike 3 Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at *6 (listing examples). "[T]he Doe Defendant's First Amendment right to remain anonymous must give way to Plaintiff's right to use the judicial process to pursue its allegedly meritorious copyright infringement claim. Moreover, the Doe Defendant lacks the right under the Fourth Amendment to protect his IP address from revelation, where he has voluntarily shared such information with the Internet Service Provider. Plaintiffs will be granted leave to take early discovery to determine the identity of Defendant Doe." *Id.*  Indeed, "[c]ourts routinely find the balance favors granting a plaintiff leave to take early discovery" of the materials sought by the Plaintiffs here." *Arista Records*, 589 F. Supp. 2d 151 at 153 (quoting *UMG Recordings, Inc. v. Doe,* No. CV 08–1193, 2008 WL 4104214, at *4 & n. 3 (N.D. Cal. Sept. 3, 2008)).

C.  Protective Order

In some BitTorrent cases involving adult content, courts have found it appropriate to issue a protective order establishing procedural safeguards such as allowing a defendant to proceed anonymously.  *See e.g.*, *Strike 3 Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at *6–7.  Strike 3 respectfully encourages the Court to establish such procedures here, should the Court find it appropriate.

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests this Court grant leave to Plaintiff to issue a Rule 45 subpoena to Defendant's ISP.

Dated: 08/19/2025

Respectfully submitted,

By:    /s/ *Jacqueline M. James*
Jacqueline M. James, Esq. (1845)
The James Law Firm, PLLC
445 Hamilton Avenue
Suite 1102
White Plains, New York 10601
T: 914-358-6423
F: 914-358-6424
E-mail: jjames@jacquelinejameslaw.com
*Attorneys for Plaintiff*

10